**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **VALLEY CHILI PROPERTIES, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | **NO. 2022DCV0794** |
| | § | |
| v. | § | |
| | § | |
| **TRUIST BANK,** | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

TO THE HONORABLE KATHLEEN CARDONE, UNITED STATES DISTRICT JUDGE:

Plaintiff, VALLEY CHILI PROPERTIES, LLC, complains of TRUIST BANK, and also includes claims and causes of action against TRUIST BANK not included in the amended petition filed in the 205th District Court of El Paso County, Texas before this case was removed to this Court by TRUIST BANK.

In support of this amended complaint, Plaintiff would show the Court as follows:

**I.
Parties, Jurisdiction, and Venue**

1.  Plaintiff, **Valley Chili Properties, LLC,** is Texas single-member limited liability company with its principal office in El Paso County, Texas, whose principal is David C. Fuller.

2.  Defendant, **Truist Bank,** is a bank organized under the laws of the State of North Carolina, authorized to do business and doing business in Texas. Defendant may be served with citation through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, at the registered address of 211 E. 7th Street, Suite 620, Austin, Texas 78701.

3. This Court may exercise personal jurisdiction over the Defendant because Defendant maintains its regular businesses in Texas through multiple branches operating in Texas, thus availing themselves of the benefits and protections of the laws of this State.

4. Venue is proper in El Paso County, Texas, pursuant to section 15.002 of the Texas Civil Practice and Remedies Code, because a substantial part of the transactions giving rise to this lawsuit occurred in El Paso County, Texas and the injuries and loss at issue have been inflicted and sustained by Plaintiff in El Paso County, Texas.

5. Regarding subject matter jurisdiction, Defendant TRUIST BANK removed this case to this Court contending that diversity jurisdiction exists. Plaintiff has not conceded that diversity jurisdiction exists.

## II.
## Factual Background

6. Plaintiff is a single member limited liability company, and is not a bank.

7. Plaintiff's principal, David C. Fuller, has been involved in family litigation (the "Litigation") in which he is represented by Richard Orsinger. Based on certain instructions from the court presiding in the Litigation, Mr. Orsinger and the opposing counsel agreed to place the certain funds of Plaintiff either in the registry of the court or in an account that would be controlled jointly by Plaintiff or Mr. Fuller (and not solely by Plaintiff or Mr. Fuller) and would thus be safeguarded until the Litigation was resolved. The funds in question were derived from the sale of Plaintiff's business. Mr. Fuller contended (and continues to contend) that the funds in question are not subject to invasion or division by the court presiding in the Litigation.

8. On Monday, October 30, 2023, Plaintiff's principal, Mr. Fuller, received an email purporting to be from his attorney, Richard Orsinger. The email address shown on the email for Mr. Orsinger matched Mr. Orsinger's email address and the email therefor appeared genuine. The email

was courtesy-copied to an email address that appeared to be the email address of Mr. Orsinger's paralegal, Linda Akin, whose correct email address was (and is) "lakin@ondafamilylaw.com". Mr. Fuller did not notice that the email address for Linda Akin in the October 30, 2023 email from Mr. Orsinger contained an almost indiscernible additional "s" in the address. Thus, the Linda Akin address in the email, "lakin@ondafamilylaws.com", was not genuine.

9. The email offered Mr. Fuller the option of sending the funds in question, which totaled approximately $13.8 million and which were owned and held by Plaintiff at the time, to Mr. Orsinger's law firm trust account for safekeeping instead of placing the funds in the registry of the court for the Litigation. The email directed Mr. Fuller as follows:

> From: Richard Orsinger <richard@ondafamilylaw.com>
> Sent: Monday, October 30, 2023 9:47:39 AM
> To: Dave Fuller <dfuller@tseltd.com>
> Cc: lakin@ondafamilylaws.com <lakin@ondafamilylaws.com>
> Subject: Re: Bank information for mandatory 2 signature accounts.
>
> Dave—Another option to safeguard the funds is to remand it to our Law Firm Trust account and the Law Firm Trust account also has an incremental interest like T-Bills until the funds are needed.
>
> We confirmed this option today and Norma's consent is not needed, according to the motion using the LawFirm Trust account is the appropriate option in such matters.
>
> Remanding to the registry of the court is not a good option for this might allow them to delay the motion due to the registry always taking time to release funds held.
>
> Let me know your thoughts on this, so we can send our LawFirm Trust wiring instructions
>
> Richard

10. That same day, Monday, October 30, 2023, Mr. Fuller responded by replying to "all", which meant the email was delivered to the email address which appeared to be for Linda Akin but had the cannily-indetectable additional "s", "lakin@ondafamilylaws.com",

> From: Dave Fuller <dfuller@tseltd.com>
> Sent: Monday, October 30, 2023 11:03 AM
> To: Richard Orsinger <richard@ondafamilylaw.com>; Linda Akin <lakin@ondafamilylaw.com>; Dave Fuller <dfuller@tseltd.com>
> Cc: lakin@ondafamilylaws.com <lakin@ondafamilylaws.com>
> Subject: Re: Bank information for mandatory 2 signature accounts.
>
> Richard
> I'm in favor of the using your law firm's trust account.
> Please send me wiring instructions.
>
> Dave

    11.    Shortly thereafter, Mr. Fuller received wiring instructions which appeared to have been provided by Mr. Orsinger from Mr. Orsinger's correct email address:

> From: Richard Orsinger <richard@ondafamilylaw.com>
> Sent: Monday, October 30, 2023 11:39 AM
> To: Dave Fuller <dfuller@tseltd.com>; lakin@ondafamilylaws.com
> Cc: lakin@ondafamilylaws.com
> Subject: Re: Bank information for mandatory 2 signature accounts.
>
> Dave—Attached is the wiring instruction.
>
> Can you send me a copy of the transfer after initiation?
>
> Richard

    12.    The wiring instructions attached to the said email are duplicated here, for the Court's review (and are hereafter referred to as the "Wire Transfer Order"):

[see next page]

**ORSINGER, NELSON, DOWNING & ANDERSON, L.L.P.**

FED WIRE:

TRUIST BANK

| | |
|---|---|
| Name on Account: | Orsinger, Nelson, Downing, & Anderson L.L.P. TRUST<br>128 Marilou LN Youngsville, NC 27596 |
| Account No.: | 1340023171456 |
| ABA or Routing No.: | 053101121 |
| Bank Address: | 2214 Nash St N, Wilson NC 27896 |

13.    That same day, October 30, 2023, Plaintiff asked Defendant WESTERN HERITAGE BANK ("WESTERN"), to wire the funds in question to the account reported to Mr. Fuller as Mr. Orsinger's law firm trust account, and received the following confirmation from WESTERN:

[see next page]

**Confirmation**
Account Number: 112206763
Transaction Date: 10/30/2023

| | | | |
|---|---|---|---|
| Business Function - (3600) | CTR | Type/SubType - (1510) | 1000 |
| Amount - (2000) | $13,723,281.65 | | |
| Sender Reference | 103023 SBL001030 | | |
| **Receiver Bank - (3400)** | | | |
| ABA | 053101121 | Bank Name | Truist Bank |

**IMAD**

| | | | |
|---|---|---|---|
| Cycle Date | 20231030 | Sequence Number | 001030 |
| Endpoint ID | MMQFMP23 | | |

**OMAD**

| | | | |
|---|---|---|---|
| Output Date | 1030 | Output FRB Appl ID | FT03 |
| Output Time | 1701 | | |
| Cycle Date | 20231030 | Sequence Number | 011686 |
| Endpoint ID | E3QP021C | | |

**Sender Bank - (3100)**

| | |
|---|---|
| ABA | 103003616 |
| Bank Name | TBB |

**Sender Supplied Information**

| | |
|---|---|
| Sender Duplication Code | |
| Sender Format Version | 30 |
| Sender Test Production Code | P |
| Sender URC Data | |

**Originating Bank - (5100)**

| | |
|---|---|
| Id Code | Federal Routing Number |
| Identifier | 112206763 |
| Name | Western Heritage Bank |
| Address 1 | 230 S Alameda Blvd. |
| Address 2 | |
| Address 3 | Las Cruces, NM 88005 |

**Originator - (5000)**

| | |
|---|---|
| Id Code | DDA Account Number |
| Identifier | 530000423 |
| Name | VALLEY CHILE PROPERTIES- SALE |
| Address 1 | PROCEEDS FROM SERIES |
| Address 2 | 530 VALLEY CHILI RD |
| Address 3 | VINTON TX 79821 |

**Beneficiary - (4200)**

| | |
|---|---|
| Id Code | DDA Account Number |
| Identifier | 1340023171456 |
| Name | ORSINGER, NELSON, DOWNING |
| Address 1 | & ANDERSON LLP TRUST |
| Address 2 | 128 MARILOU LN |
| Address 3 | YOUNGSVILLE NC 27596 |

**Transaction Tracker Users**

Add User   Forward   Remove User

| | |
|---|---|
| TransactionDate | 10/30/2023 4:02:05 PM |
| Date Created | 10/30/2023 4:02:05 PM |

Page **6** of **19**

4854-4736-7569, v. 2

14. As may be seen from the wire confirmation, the "Beneficiary" of the wire was identified as "Orsinger Nelson Downing & Anderson LLP Trust":



Orsinger Nelson Downing & Anderson LLP is the correct name of Mr. Orsinger's law firm. *See* https://www.ondafamilylaw.com/. As may also be seen from the wire confirmation, the "Receiver Bank" was Defendant TRUIST BANK ("TRUIST"):



15. On or about November 7, 2023, Plaintiff discovered it had been the victim of wire fraud. According to information provided by TRUIST, the wired funds were not deposited to the Orsinger, Nelson, Downey & Anderson LLP ("*Orsinger Nelson*") trust account, but were instead deposited to an account held in another name. The name on the account is unknown to Plaintiff and to Mr. Fuller, and TRUIST has not disclosed, and has withheld disclosure of, the name of the account into which the wire transfer funds were deposited (the "*fraudulent account*").

16. On or about November 7, 2023, TRUIST demanded an indemnity agreement protecting TRUIST in the event that the wired funds proved ultimately to belong to someone other than Plaintiff. Plaintiff promptly provided the requested indemnity. Despite Plaintiff's prompt action in delivering the requested indemnity, TRUIST continued to withhold and still continues to withhold disclosure of the name of the fraudulent account into which the funds were deposited by TRUIST and to withhold disclosure of the subsequent fate of the funds. TRUIST also continues to withhold all or

part of the wired funds. Plaintiff does not know the name of the holder of the fraudulent account to which the funds were transferred, or the subsequent fate of the funds; TRUIST has not revealed the said name of the fraudulent account holder or the subsequent disposition of the funds; and TRUIST has effectively stonewalled Plaintiff's efforts to learn what has happened to the wired funds.

17. On or about November 8, 2023, one of TRUIST's officers came to Orsinger Nelson's Dallas office and told Mr. Orsinger that the funds were still in the original fraudulent account and that there was a "hold" on the account. The officer also represented that the name on the fraudulent account, despite the Wire Transfer Order and the confirmation, was not the same name to which the wire transfer was directed, i.e., "Orsinger Nelson Downing & Anderson LLP Trust".

18. The following day, however, November 9, 2023, TRUIST's officer told Mr. Orsinger in a subsequent telephone conversation that, despite his representations to Mr. Orsinger the day before, some or all of the wired funds were not in the fraudulent account, but instead had been transferred to other accounts. TRUIST's officer further stated that he could not tell Mr. Orsinger whether those other accounts were TRUIST accounts, nor could he disclose to Mr. Orsinger the name on the fraudulent account that received the $13,723,281.65 wire transfer.

19. After this lawsuit originated in the State Court, TRUIST's counsel represented to Plaintiff's counsel that TRUIST remains in control of $5.8 million of the wired funds. TRUIST has provided no information regarding the balance of the wired funds.

20. It is common in wire fraud cases for an imposter falsely posing as someone known to the target to ask the target to transfer money to a bank account bearing the same name as the person known to the target but secretly controlled by the imposter. After the funds are wired to the account controlled by the imposter, the imposter next transfers the wired funds from that account to other accounts within the same bank hoping thus to evade detection. After the funds are so transferred

within the bank, the imposter (and perhaps his confederates) then transfer the funds out of the depository bank into accounts in other banks. (Not all wire transfer fraudsters adhere to the same *modus operandi*. Nevertheless, the scheme described in this paragraph represents a common blueprint for wire transfer fraud.)

21. Here, the first step has been accomplished. Plaintiff was induced to transfer more than $13 million into an account at TRUIST under the pretense that the fraudulent account was the trust account of Orsinger Nelson. After the wire transfer was confirmed, Plaintiff learned that the fraudulent account was not the Orsinger Nelson trust account. Nevertheless, TRUIST's officer assured Plaintiff's lawyer on November 8, 2023 that the funds remained in the fraudulent account and that there was a "hold" on the fraudulent account. Based on the revelations from TRUIST's officer on November 9, 2023, it now appears that the second step in the fraudulent scheme has also been accomplished, in that Plaintiff's funds appear to have been transferred to other accounts within TRUIST's control. It thus appears that Plaintiff is now at risk that the final step will be accomplished, by which the funds will be transferred out of TRUIST's control.

22. To the degree or extent that Plaintiff may do so at this time under NC Gen. Stat. § 25-4A-211(c)(2) (or, alternatively, under Tex. Bus. & Com. Code § 4A.211(c)(2)), Plaintiff cancels the Wire Transfer Order on the grounds that the Wire Transfer Order was issued because of a mistake by Plaintiff, as the sender, which resulted in the issuance of a wire transfer order (i.e., a payment order) that ordered payment to a beneficiary (i.e., the imposter) not entitled to receive payment from Plaintiff.

23. Consequently, Plaintiff is seeking (a) injunctive relief to require TRUIST to freeze and hold all of the wired funds remaining within Defendant's reach or control, pursuant to NC Gen. Stat. § 25-4A-503 (or, alternatively, Tex. Bus. & Com. Code § 4A.503) and/or Tex. Civ. Prac. & Rem. Code § 37.011 and pursuant to any applicable law; (b) injunctive relief preventing TRUIST

from withholding and from failing to immediately provide to Plaintiff and Orsinger Nelson all information that TRUIST has in its possession, custody, or control regarding the wire transfer, the fraudulent account that received the funds, all transactions in the fraudulent account that received the funds, all information TRUIST has regarding any other accounts to which the wired funds were subsequently transferred, and all transactions in such transferee accounts; and (c) other relief against Defendant as more-fully described below.

24. All conditions precedent have occurred, have been fulfilled, or have been waived.

25. All of the following claims and causes of action are asserted cumulatively and alternatively.

### III.
### Claims and Causes of Action

#### A.  NC Gen. Stat. § 25-4A-207(b)

26. The preceding paragraphs are incorporated herein by reference.

27. The Wire Transfer Order identified the Beneficiary both by name and account number.

28. According to TRUIST, the name and the account number identified different persons.

29. Plaintiff is not a bank.

30. The Beneficiary identified in the Wire Transfer Order by account number was not entitled to receive payment from Plaintiff in any sum; the said beneficiary is and was an imposter engaged in wire transfer fraud who induced Plaintiff to issue the Wire Transfer Order by fraud.

31. The Wire Transfer Order on its face identified Orsinger Nelson Downing & Anderson L.L.P. Trust as the intended Beneficiary of the wired funds.  TRUIST's bank officer, on or about November 8, 2023, informed Mr. Orsinger that the name for the account number identified on the face of the Wire Transfer Order did not match the name of the Beneficiary.

32. Consequently, TRUIST knew upon receiving the Wire Transfer Order that the name of the Beneficiary did not match the name on the fraudulent account into which the wired funds were placed or credited; the mismatch was revealed on the face of the Wire Transfer Order and the face of the fraudulent account as well as in the records of TRUIST.

33. Consequently, acceptance of the Wire Transfer Order did not and could not occur. NC GEN. STAT. § 25-4A-207(b)(2).

34. An unaccepted payment order is cancelled *by operation of law* at the close of the fifth funds transfer business day of the receiving bank. NC GEN. STAT. § 25-4A-211(e). Here, TRUIST is the receiving bank. NC GEN. STAT. § 25-4A-103 (4).

35. Therefore, Plaintiff is entitled to reimbursement or restitution of all of the wired funds from TRUIST.

36. Plaintiff seeks a judgment against TRUIST for reimbursement or restitution of all of the wired funds, together with any prejudgment and postjudgment interest, costs, and attorney's fees that may be allowed at law or in equity.

### B. Declaratory Judgment

37. The preceding paragraphs are incorporated herein by reference.

38. There exists a current, *bona fide,* live controversy between Plaintiff and TRUIST, concerning (a) ownership and control of the funds wired to TRUIST on October 30, 2023; (b) ownership and control of the fraudulent account and the funds deposited into the said account via the wire transfer initiated by Plaintiff; (c) TRUIST's management, oversight, and control of the fraudulent account and any other accounts into which Plaintiff's funds may have been subsequently transferred.

39. Though at first TRUIST stated that it had identified, controlled, and frozen the fraudulent account and the wired funds, TRUIST has since vacillated on its own ability and authority

to identify and control the wired funds and has refused to confirm that it can identify and control such funds, while Plaintiff avers that TRUIST is obligated to do so.

40.     TRUIST has furthermore through its actions and representations failed or refused to acknowledge Plaintiff as the sole owner of the wired funds.  If TRUIST were to rightfully acknowledge Plaintiff as the sole owner of the wired funds, Plaintiff and TRUIST could take steps necessary to locate, freeze, recover, and return the wired funds to Plaintiff.  However, TRUIST either fails or refuses to assist Plaintiff in locating, freezing, recovering, and returning the said funds under the contrived rubric that Plaintiff is not the accountholder for the fraudulent account into which Plaintiff's monies were deposited.  The identity of the nominal holder of a fraudulent account does not sever, interfere with, or affect Plaintiff's right to the funds on deposit.  Nor can TRUIST shield the account or the funds on deposit from the true owner of the funds, i.e., Plaintiff, by relying on privacy laws in the interest of the nominal fraudulent account holder, when such laws do not purport to confer upon a swindler or a hacker a right of ownership in Plaintiff's monies obtained through fraud.  The monies are Plaintiff's by sole right regardless of where the funds may reside as a result of fraudulent or illegal acts.

41.     Consequently, Plaintiff seeks a judicial declaration under the Texas Declaratory Judgments Act (Chapter 37 of the Texas Civil Practice and Remedies Code) (a) that Plaintiff is the sole and superior owner of the monies transferred to TRUIST on or about October 30, 2023 by way of the wire transfer to the fraudulent account; (b) that Plaintiff, as the sole owner, has an immediate right to recovery, possession, and control of the said funds, regardless of where the said monies may reside; and (c) that TRUIST's present refusal to aid and assist Plaintiff is in disregard and frustration of Plaintiff's right to recover its property.

42. Under Section 37.009 of the Texas Declaratory Judgments Act, Plaintiff also seeks to recover its reasonable attorney's fees and costs incurred in commencing and prosecuting this lawsuit.

### C. Money Had and Received

43. The preceding paragraphs are incorporated herein by reference.

44. According to TRUIST, $5.8 million (more or less) of the wired funds remain in its possession and/or control.

45. Because such funds are in TRUIST's possession or control as a result of a wire transfer fraud perpetrated on Plaintiff, such wired funds rightfully belong to Plaintiff both in equity and good conscience.

46. A cause of action for money had and received is an *equitable* cause of action and is

> "[L]ess restricted and [less] fettered by technical rules and formalities than any other form of action. It aims at the abstract justice of the case, and looks solely to the inquiry, whether the defendant holds money, that belongs to the plaintiff."

*Staats v. Miller,* 150 Tex. 581, 584, 243 S.W.2d 686, 687 (1951); *Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 840 (5th Cir. 2004); *Partners & Friends Holding Corp. v. Cottonwood Minerals L.L.C.*, No. 3:22-CV-02502-Z-BR, 2023 WL 2291252, at *2 (N.D. Tex. Jan. 27, 2023); *see also Amoco Prod. Co. v. Smith,* 946 S.W.2d 162, 164 (Tex.App.-El Paso 1997, no writ) (stating that the cause of action for money had and received belongs conceptually to the doctrine of unjust enrichment); *Edwards v. Mid–Continent Office Distributors, L.P.,* 252 S.W.3d 833, 837 n. 7 (Tex. App.-Dallas 2008, pet. denied) (acknowledging that courts use the term "money had and received" interchangeably with other terms for similar claims, including assumpsit, unjust enrichment, and restitution). "A claim for money had and received seeks to restore money where equity and good conscience require restitution; it is not premised on wrongdoing, but seeks to determine

to which party the money rightfully belongs; and it seeks to prevent unconscionable loss to the owner of the funds and unjust enrichment to the person in possession or control of the funds, <u>or others</u>." *Edwards v. Mid–Continent Office Distributors, L.P.,* 252 S.W.3d 833, 837.

47. Accordingly, Plaintiff seeks a judgment against TRUIST in equity for money had and received in the sum of the portion of the wired funds remaining in TRUIST's possession and control, together with any prejudgment and postjudgment interest, costs, and attorney's fees that may be allowed at law or in equity.

### D. Restitution and Unjust Enrichment

48. The preceding paragraphs are incorporated herein by reference.

49. TRUIST has in its possession and control, according to its counsel, $5.8 million of the wired funds. Plaintiff was induced by fraud to deliver the wired funds into TRUIST's possession and control. The funds are a benefit to TRUIST in, among other things, increasing its deposits on hand. TRUIST has no right to the funds. Nor does the fraudster. Because it has not right to the funds, it would be unjust for TRUIST to retain the funds. It would be unjust to allow the fraudster to retain or abscond with the funds. The fraudster, TRUIST's "customer", has no right to the funds, because the fraudster is the wire transfer imposter who engineered the wire transfer fraud in the first instance.

50. "Restitution is the law of nonconsensual [transfers of property] and nonbargained benefits . . .." RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 1 cmt. d (2011). "It protects property rights against those who have <u>by accident or through wrongdoing</u> gained control over the money, property, or benefit in controversy and have thus been unjustly enriched." David A. Dittfurth, RESTITUTION IN TEXAS: CIVIL LIABILITY FOR UNJUST ENRICHMENT, 54 S. Tex. L. Rev. 225, 230-31 (2012).

51. "Section 1 of the Restatement (Third) states that '[a] person who is unjustly enriched at the expense of another is subject to liability in restitution.'" Dittfurth, RESTITUTION IN TEXAS: CIVIL LIABILITY FOR UNJUST ENRICHMENT, 54 S. Tex. L. Rev. 225, 232-33 (quoting from RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 1). "We have previously determined that a party claiming unjust enrichment must prove that (1) the defendant received a benefit (2) at the plaintiff's expense (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation." *Lewis v. Lewis*, 189 P.3d 1134, 1141 (Colo. 2008) (en banc).

52. "Texas courts may waffle about whether unjust enrichment is a theory of recovery or an independent cause of action, but either way, they have provided the plaintiff with relief when the defendant has been unjustly enriched." *Newington Ltd. v. Forrester,* No. 3:08-CV-0864-G ECF, 2008 WL 4908200 at *4 (N.D. Tex. Nov. 13, 2008).

53. Additionally and alternatively, to the extent that TRUIST rightfully paid its customer, the imposter/fraudster, who was not entitled to receive the wired funds from Plaintiff, and to the extent Plaintiff is not obliged to pay on the Wire Transfer Order, Plaintiff is entitled to restitution of the funds so paid. NC GEN. STAT. § 25-4A-207(d) (or, alternatively, Tex. Civ. Prac. & Rem. Code § 4A.207(d)). Although TRUIST may no longer be in possession of the funds paid to its "fraudster customer", the right so recognized in Article 4A of the Uniform Commercial Code underscores Plaintiff's right to restitution of the wired funds remaining in TRUIST's possession and/or control.

54. Accordingly, Plaintiff seeks a judgment against TRUIST in equity for restitution of the portion of the wired funds remaining in TRUIST's possession and control, together with any prejudgment and postjudgment interest, costs, and attorney's fees that may be allowed at law or in equity.

### E. Constructive Trust

55. The preceding paragraphs are incorporated herein by reference.

56. "When property has thus been wrongfully acquired, equity converts the holder into a trustee, and compels him to account for all gains from such conduct." *Hunter v. Shell Oil Co.*, 198 F.2d 485, 489 (5th Cir. 1952). "Three elements are generally required for a constructive trust to be imposed under Texas law. The party requesting a constructive trust must establish the following: (1) . . . actual or constructive fraud; (2) unjust enrichment of the wrongdoer; and (3) an identifiable *res* that can be traced back to the original property. *KCM Financial LLC v. Bradshaw*, 457 S.W.3d 70, 87 (Tex. 2014).

57. Here, TRUIST wrongfully acquired possession and control of the wired funds by actual fraud. Although TRUIST may not be the fraudster, the fraudster is or was its "customer" and the funds came into TRUIST's possession and control as a result of its customer's wrongful, fraudulent conduct. Finally, there is an identifiable *res* traceable to the Wire Transfer Order, i.e., the wired funds.

58. Accordingly, Plaintiff seeks an order and a judgment in equity imposing a constructive trust on TRUIST and the wired funds and compelling TRUIST to account for the said funds and any gain derived by TRUIST from such funds, together with any prejudgment and postjudgment interest, costs, and attorney's fees that may be allowed at law or in equity.

### F. Negligence

59. The preceding paragraphs are incorporated herein by reference.

60. The Funds Transfers provisions of the Uniform Commercial Code, at Chapter 4A, do not govern TRUIST's negligent conduct asserted herein.

61.     On or about November 7, 2023, TRUIST was informed that the wire transfer was induced by fraud.  Upon receiving such information, TRUIST owed a duty to Plaintiff to safeguard and freeze the wired funds.  TRUIST, through its bank officer, did in fact represent to Mr. Orsinger that all of the wired funds were on deposit in the fraudulent account and that TRUIST had a "HOLD" on the account.  Thus, TRUIST implicitly recognized its duty to safeguard and freeze the wired funds.

62.     TRUIST negligently and recklessly breached its duty by failing to safeguard, freeze, and/or hold all of the wired funds.  Instead, based on TRUIST's communications through its counsel, TRUIST negligently and recklessly permitted approximately $8 million to escape its "HOLD".

63.     TRUIST negligent and reckless conduct has been or will be a cause in fact and a proximate cause of damages to Plaintiff in the form of a loss of $8 million or more to Plaintiff.

64.     Plaintiff is entitled to judgment against TRUIST for its damages and losses caused by TRUIST's negligent and reckless conduct, as well as all prejudgment and post-judgment interest and costs as may be allowed by law.

## IV.
## Jury Demand

65.     Plaintiff demands a jury trial.

## V.
## Right to Amend

66.     Plaintiff reserves its right to amend.

## PRAYER

**FOR THESE REASONS**, Plaintiff respectfully prays that Defendants be cited to appear and answer, and that on final trial Plaintiff receive the following relief:

A.      A judicial declaration of Plaintiff's sole right, title, and interest in the monies transferred to the fraudulent account, wherever the monies may now or subsequently rest, and without

regard to the identity of the nominal accountholder of any account in which such monies may reside, together with an award to Plaintiff of attorney's fees and costs.

B. Judgment against TRUIST under Article 4A of the Uniform Commercial Code requiring TRUIST to pay and restore the wired fund to Plaintiff.

C. Judgment against TRUIST for money had and received.

D. Judgment against TRUIST for restitution and unjust enrichment.

E. Judgment imposing a constructive trust upon the wired funds.

F. Judgment for damages caused by TRUIST's negligence.

D. An award of any pre- and post-judgment interest, attorney's fees, and costs as may be allowed by law; and

E. Such other and further relief, both general and special, at law and in equity, to which Plaintiff may be justly entitled.

        Respectfully submitted,

        **SCOTTHULSE PC**
        One Jacinto Plaza
        201 E. Main Street, Ste. 1100
        El Paso, Texas  79901
        (915) 533-2493
        (915) 546-8333 Facsimile

    By: */s/ Robert. R. Feuille*
        **ROBERT R. FEUILLE**
        Texas Bar No. 06949100
        bfeu@scotthulse.com
        **HENRY J. BECKER**
        Texas Bar No. 24129386
        hbec@scotthulse.com
        *Attorneys for Plaintiff*

## DECLARATION UNDER PENALTY OF PERJURY

STATE OF TEXAS        )
                      )
COUNTY OF EL PASO     )

"My name is DAVID C. FULLER, my date of birth is xx/xx/1953, and my address is 530 Valley Chile, Vinton, Texas 79821. I declare UNDER PENALTY OF PERJURY that the facts set forth above are true and correct."

Executed in El Paso County, Texas, on this 20 day of November, 2023.

_____
DAVID C. FULLER

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document has been filed with the Court via the EFile.TXCourts.gov system. All attorneys identified with the Court for electronic service on record in this case were served by electronic transmission in accordance with the EFile.TXCourts.gov system on this 20th day of November 2023:

David Clem
Johnston Clem Gifford PLLC
1717 Main Street, Suite 3000
Dallas, Texas 75201
dclem@johnstonclem.com                    */s/ Robert R. Feuille* _____
                                          **ROBERT R. FEUILLE**