**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **VALLEY CHILI PROPERTIES, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CAUSE NO. EP-23-CV-420-KC** |
| | § | |
| **TRUIST BANK,** | § | |
| | § | |
| **Defendant.** | § | |

**ORDER**

On this day, the Court considered Plaintiff's Motion for Preliminary Injunction ("Motion"), ECF No. 7. On November 15, 2023, Plaintiff filed a Motion for a Temporary Restraining Order ("TRO"), ECF No. 4. The Court granted the TRO in part, *see* Nov. 15, 2023, Order 4, ECF No. 5, and set a Preliminary Injunction Hearing ("Hearing") to determine whether it should issue a preliminary injunction, *id.* The Hearing was held on November 27, 2023, after which the Court took the matter under advisement. For the reasons below, the TRO is **DISSOLVED**, and the Motion for Preliminary Injunction is **DENIED**.

## I. BACKGROUND

The case concerns approximately $13.7 million that Plaintiff was tricked into wiring to a bank account (the "Account") belonging to one of Defendant's account holders.[1] Mot. ¶¶ 12–14. Plaintiff directed its bank, Western Heritage Bank, to send the wire transfer on October 30, 2023. Mot. ¶ 12. On November 7, Plaintiff discovered that the Account was not a trust account belonging to Plaintiff's attorney, as Plaintiff originally believed, but rather belonged to an

[1] The essential facts, as stated in the parties' briefing and supported by testimony at the Hearing, are not in dispute.

unnamed and unknown party. Mot. ¶ 14. Plaintiff alerted Western Heritage Bank, which in turn asked Defendant to return the funds due to fraud. *See* Mot. ¶ 15; Resp. 2, ECF No. 12. At that point, Defendant blocked further withdrawals from the Account—in which about $5.8 million of the original $13.7 million remained—and other accounts belonging to the Account's owner. Resp. 2. Then, on November 15, the TRO placed a freeze on the Account's remaining balance. TRO 4. In the Motion, Plaintiff asks the Court to extend that freeze by enjoining Defendant "from paying to anyone, transferring, releasing, or allowing anyone to withdraw, transfer, or take possession or control of those wired funds remaining in [Defendant's] possession and control." Mot. 29.

## II. DISCUSSION

### A. Standards

#### 1. Preliminary Injunction Standard

To obtain a preliminary injunction, a plaintiff must establish:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

*Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011) (quoting *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009)). A plaintiff's likelihood of success on the merits is determined by reference to the applicable substantive law. *William E. McBryde, Inc. v. Rodriguez*, No. 7-CV-143, 2007 WL 628793, at *2 (W.D. Tex. Feb. 13, 2007) (quoting *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997)). A preliminary injunction is an extraordinary, equitable remedy that "should only be granted when the movant has clearly carried the burden of persuasion." *Svoboda v. Bank of Am., N.A.*, 964 F. Supp. 2d 659, 673 (W.D. Tex. 2013) (citing *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009)); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555

U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right." (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008))).

**2. Article 4A of the Uniform Commercial Code ("UCC")**

The applicable substantive law here is Article 4A of the UCC, which governs "funds transfers"—also known as wire transfers—from one bank to another. *See* N.C. Gen. Stat. § 25-4A-102 (defining Article 4A's subject matter).[2] Article 4A creates "precise and detailed rules" for wire transfers that "assign responsibility, define behavioral norms, allocate risks and establish limits of liability." *META Sols. v. First State Bank of Brownsboro*, No. 19-CV-329, 2020 WL 12991132, at *3 (E.D. Tex. Apr. 16, 2020) (citation omitted); N.C. Gen. Stat. § 25-4A-102 cmt. Because Article 4A creates a precise system for dealing with wire transfers, a plaintiff cannot assert common-law claims that are incongruent with this system—Article 4A "*exclusively* determines[s] 'the rights, duties, and liabilities' of parties in any situation covered by the particular provisions of the Article." *Hirt v. Wells Fargo Bank, N.A.*, No. 20-cv-1616, 2021 WL 536514, at *3 (S.D. Tex. Jan. 5, 2021) (quoting *Consorcio Industrial de Construccion Titanes, S.A. de C.V. v. Wells Fargo Bank, N.A.*, No. 10-cv-2111, 2012 WL 13019678, at *2 (N.D. Tex. July 12, 2012)).

To send a wire transfer, the entity sending the money—the "originator"—orders its bank to send money to a beneficiary, typically identifying the beneficiary by name and bank account number. *See* N.C. Gen. Stat. § 25-4A-104(a), (c). The originator's bank sends the money as a wire transfer to the beneficiary's bank, and the beneficiary's bank accepts the transfer and then deposits the money into the beneficiary's account. *See id.*

[2] Article 4A directs that "[t]he rights and obligations between the sender of a payment order and the receiving bank are governed by the law of the jurisdiction in which the receiving bank is located." N.C. Gen. Stat. § 25-4A-507(a)(1); *see also* Tex. Bus. & Com. Code § 4A.507(a)(1) (same). Because Defendant is located in North Carolina, Reply 2, ECF No. 13, the Court applies North Carolina's codification of Article 4A for purposes of this Order.

Wire transfers are sometimes sent to the wrong bank account. This can happen when the account number provided by the originator belongs to someone other than the intended, named beneficiary. *See, e.g.*, *Approved Mortg. Corp. v. Truist Bank*, 638 F. Supp. 3d 941, 943–44 (S.D. Ind. 2022). In that event, Article 4A allows the beneficiary's bank to rely on the transmitted account number as proper identification and accept the transfer, unless the beneficiary's bank knows there is a mismatch between the intended beneficiary and the name on the account. *See* N.C. Gen. Stat. § 25-4A-207(b)(1). When such a wire transfer is accepted by the beneficiary's bank and deposited in an unintended beneficiary's account, either the originator or their bank can attempt to recover the money "from that [unintended beneficiary] to the extent allowed by the law governing mistake and restitution." *Id.* § 25-4A-207(d). But this right to recovery is limited to the unintended beneficiary and does not extend to the unintended beneficiary's bank. *See id.*; *Serviacero Especiales SA de CV v. JPMorgan Chase Bank, N.A.*, No. 21-380, 2021 WL 4805447, at *4 (C.D. Cal. May 20, 2021).

On the other hand, when a beneficiary's bank has "actual knowledge" of a mismatch between the named beneficiary and the owner of the bank account, the bank cannot accept the wire transfer. *See* N.C. Gen. Stat. § 25-4A-207(b)(2); *id.* § 25-4A-207 cmt. 2. In such situations, the sender of the wire transfer is "excused" from paying for the wire transfer, *id.* § 25-4A-402(c), and can recover any money that was wrongly transferred to the beneficiary's bank, *id.* § 25-4A-402(d). The "sender" of such a wire transfer is the bank that sent the wire transfer, not a non-bank originator—thus an originator's bank directly recovers from the beneficiary's bank, and the originator in turn recovers the funds from the originator's bank. *Approved Mortg. Corp.*, 638 F. Supp. 3d at 950. Put simply, when a beneficiary's bank wrongly accepts a transfer and deposits funds into the account of an unintended beneficiary, Article 4A mandates an "orderly unravelling

of the wire transfers," in which "each party in the chain of transactions [can] recover from only the next party in line." *Id.* at 951; *Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 102 (2d Cir. 1998) (discussing the "sound policy reasons for limiting the right to seek a refund to the sender who directly paid the receiving bank"); *Wellton Int'l Express v. Bank of China (Hong Kong)*, 612 F. Supp. 3d 358, 364 (S.D.N.Y. 2020) (finding the plaintiff originators could not directly recover from the defendant banks due to "a lack of privity" between those parties).

**B. Analysis**

Here, the Court need only consider the first prong of the preliminary-injunction test: whether Plaintiff has shown a substantial likelihood of success on the merits. *See Nken v. Holder*, 556 U.S. 418, 434 (2009) (stating that injunctive relief should not be granted unless a movant demonstrates "more than a mere possibility of" success on the merits (cleaned up)). Plaintiff argues there is a substantial likelihood that it will succeed on the merits of its claim under the Texas Declaratory Judgment Act, Mot. ¶ 35, and under the equitable theories of money had and received, restitution, and constructive trust, Mot. ¶ 36–42. Additionally, in its Second Amended Complaint ("SAC"), ECF No. 6, Plaintiff asserts a claim for common law negligence, SAC ¶ 59–64, and claims under UCC Article 4A, SAC ¶¶ 26–36.

First, Article 4A preempts Plaintiff's non-UCC claims because those claims are directed at a scenario "plainly cover[ed]" by Section 25-4A-207. *See META Sols.*, 2020 WL 12991132, at *4. Plaintiff asserts these claims to establish that Plaintiff has a "sole and superior right" to the money transferred to the Account. Mot. ¶ 35. But Article 4A sets forth a detailed system for recovering money that was wired to an unintended beneficiary. *See* N.C. Gen. Stat. § 25-4A-207(d). Therefore, Plaintiff cannot remediate its regrettable situation through a non-UCC theory of recovery because this would circumvent the system mandated by Article 4A. *See Hirt*, 2021

WL 536514, at *3 ("Allowing Plaintiffs to pursue negligence claims could result in assessment of liability that is contrary to the allocation of risk of loss set forth in Article 4A of the Texas Business & Commerce Code.").

Indeed, a comment to Section 25-4A-207 illustrates the statute's intended reach. It discusses a hypothetical scenario in which:

> Doe is the holder of shares in Mutual Fund. Thief, impersonating Doe, requests redemption of the shares and directs Mutual Fund to wire the redemption proceeds to Doe's account #12345 in Beneficiary's Bank. Mutual Fund originates a funds transfer by issuing a payment order to Originator's Bank to make the payment to Doe's account #12345 in Beneficiary's Bank. Originator's Bank executes the order by issuing a conforming payment order to Beneficiary's Bank which makes payment to account #12345. That account is the account of Roe rather than Doe. Roe might be a person acting in concert with Thief or Roe might be an innocent third party.

N.C. Gen. Stat. § 25-4A-207 cmt. 2. The statute envisions situations precisely like the present one, in which an originator is fraudulently tricked into wiring money to the account of an unintended beneficiary. And "Section 4A-207 resolves this issue." *Id.* Accordingly, Plaintiff's non-UCC claims—which Plaintiff asserts in an attempt to recover money within Defendant's control—are "inconsistent with" the "rights, duties, and liabilities" set forth in Article 4A. *Consorcio Indus.*, 2012 WL 13019678, at *2 (quoting *Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267, 1274–75 (11th Cir. 2003)).

Second, turning to whether Plaintiff is substantially likely to succeed on the merits of its Article 4A claim, Plaintiff alleges that Defendant *knew* there was a mismatch between the wire transfer's intended beneficiary and the Account's owner, such that Defendant's "acceptance of the [wire transfer] did not and could not occur" under Section 25-4A-207(b)(2). SAC ¶¶ 31–33. Assuming as true Plaintiff's assertion that Defendant had actual knowledge of the mismatch between the intended beneficiary and the Account's owner, Article 4A nevertheless does not

authorize Plaintiff to directly recover from Defendant the money that was transferred to the Account. *See Approved Mortg. Corp.*, 638 F. Supp. 3d at 950. Rather, Article 4A provides an "orderly" system that allows "each party in the chain of transactions to recover from only the next party in line." *Id.* Plaintiff did not send the wire transfer to Defendant—Western Heritage Bank did. Therefore, even if Defendant had actual knowledge of the mismatch and could not rightfully accept the wire transfer pursuant to Section 25-4A-207(b)(2), Plaintiff has no right to recover its funds directly from Defendant. *See Wellton Int'l Express*, 612 F. Supp. 3d at 364. Rather, that right of recovery would only belong to Western Heritage, from whom Plaintiff could, in turn, attempt to recover the funds.

In sum, Plaintiff has not shown a substantial likelihood of success on the merits because (1) Plaintiff's non-UCC claims are preempted by Article 4A, and (2) Article 4A does not allow Plaintiff to recover the wired funds directly from Defendant. Therefore, the Court cannot grant Plaintiff's request for a preliminary injunction.

## III. CONCLUSION

Accordingly, the Court **ORDERS** that the TRO, ECF No. 5, is **DISSOLVED**.

**IT IS FURTHER ORDERED** that the Motion, ECF No. 7, is **DENIED**.

**SO ORDERED**.

SIGNED this 29th day of November, 2023.

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE