**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **VALLEY CHILI PROPERTIES, LLC**<br>**PLAINTIFF** | § <br>§ <br>§ | |
| **V.** | § | **CIVIL ACTION NO. 3:23-CV-00420-KC** |
| **TRUIST BANK**<br>**DEFENDANT** | § <br>§ <br>§ | |

**TRUIST BANK'S MOTION TO DISMISS**


**JOHNSTON CLEM GIFFORD PLLC**

**David M. Clem**
Texas Bar No. 24050428
dclem@johnstonclem.com

**Richard Kim**
Texas Bar No. 24127476
rkim@johnstonclem.com

1717 Main Street, Suite 3000
Dallas, Texas 75201
(214) 974-8000 Main
(972) 474-1717 D. Clem Direct

***Attorneys for Truist Bank***

Truist Bank asks this Court to dismiss this suit for failure to state a claim.

## PRELIMINARY STATEMENT

The Court should dismiss the Amended Complaint because it already ruled that Valley Chili's claims are dead on arrival. In denying Valley Chili's injunction application and dissolving the Temporary Restraining Order, the Court made two key rulings. First, "Plaintiff's non-UCC claims are preempted by Article 4A."[1] And second, "Article 4A does not allow Plaintiff to recover the wired funds directly from Defendant."[2] The Court's analysis was sound, and nothing Valley Chili alleges (or could allege) in the Second Amended Complaint changes anything. Thus, this Court should re-adopt those holdings and dismiss the complaint with prejudice.

Apart from the merits, Valley Chili's litigation tactics have not only been discourteous but have unreasonably prolonged this case. Before the injunction hearing, Truist offered a compromise that would have avoided the hearing and kept the freeze on the subject funds. Valley Chili ignored the offer, requiring Truist to write and file an opposition paper the day before Thanksgiving and prepare for the evidentiary hearing over the holiday. After the hearing, Truist offered to waive service of citation. Again, Valley Chili ignored the offer—choosing to serve the bank on December 4, which requires a response on Christmas Day. Valley Chili has declined to confer prior to filing motions, in violation of local rules and ordinary courtesy. And despite being put on notice twice that its claims were meritless (first by Truist's briefing and then by this Court's ruling), Valley Chili continues to press its claims, ignoring counsel's duty to avoid "the willful continuation of a suit known to be meritless."[3]

For all the reasons below, the Court should dismiss the complaint with prejudice.

---

[1] Order [Doc. 17] p.7.

[2] *Id.*

[3] *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 247 (5th Cir. 1998).

## FACTUAL & PROCEDURAL BACKGROUND[4]

On October 30, 2023, Truist received a wire from Western Heritage, sent on behalf of Valley Chili, in the amount of $13,723,281.65.[5] The wire order identified "Orsinger, Nelson, Downing, & Anderson LLP Trust" as the named beneficiary but also identified a Truist account ending in *1456 to receive the funds.[6] The account did not belong to Orsinger. Truist placed the wired funds into the account number identified in the wire (the "Truist Account"), as permitted by law. The Truist Account belongs to a third-party deposit customer (the "Customer"). No evidence exists of Truist's "actual knowledge" of the discrepancy at the time it received the wire order.[7] Between November 1 and November 6, 2023, the Customer made electronic transfers and purchases from the Truist Account in the total amount of $7,862,886.72.

A week after issuing the wire, Western Heritage requested reversal.[8] On November 7, Western Heritage sent a wire recall through the wire transfer system requesting return of the funds due to fraud.[9] On November 8, Truist blocked the Truist Account and other accounts belonging to the Customer to prevent further debits and in accordance with the bank's rights under the deposit agreement. Truist also began an investigation into the source of the funds and the wire. That investigation, and the block, continues: Truist is holding $5,841.023.57 in the Truist account.

---

[4] As the Court recognized in its Order [Doc. 17], the essential facts of the matter are not in dispute. Truist derives its recitation of the facts from the Second Amended Complaint [Doc. 6] and from the evidence submitted with the Declaration of David Clem.

[5] [Doc. 6], ¶ 13.

[6] *Id.*

[7] *Compare* Second Am. Compl. [Doc. 6], ¶ 13 (the wire was dated October 30) *with id.* ¶ 15 (Valley Chili discovered the fraud on November 7) *and id.* ¶ 17 (a bank officer identified the name and number mismatch "on or about November 8"). Testimony at the injunction hearing confirmed that no bank personnel was involved before November 8, 2023.

[8] Second Am. Compl. [Doc. 6], ¶ 16.

[9] *Id.* at ¶ 15, 16.

Valley Chili believes a wrongdoer hacked the email systems of the Orsinger law firm, issuing fraudulent wire instructions that Valley Chili acted upon.[10]

David Fuller, the principal of Valley Chili, filed suit against Truist Bank on November 13 in El Paso County. Mr. Fuller amended his petition the next day to substitute his company as the party plaintiff.[11] Both state court petitions assert only a declaratory judgment claim and a request for injunctive relief. Truist removed the case to this Court, which issued a TRO to prevent further funds transfers.[12] The TRO set a November 27 hearing on Valley Chili's application for injunctive relief and directed the parties to brief their positions on November 20 (for Truist) and November 22 (for Valley Chili). The order also directed Valley Chili to "clarify the nature of its substantive claims."

The Court issued the TRO on November 15. The next day, counsel for Truist phoned and wrote counsel for Valley Chili to suggest a compromise that would preserve the freeze on the funds.[13] Valley Chili's counsel acknowledged receipt a day later but did not address the suggestions. Truist's counsel wrote again on November 17 and 20, seeking to "avoid the briefing and the Nov 27 hearing."[14] Valley Chili's counsel did not respond until after it filed its briefing.[15]

Valley Chili amended its complaint on November 20, adding a UCC claim and several common law claims,[16] and filed its application for injunction the same day.[17] On November 21, Valley Chili moved the Court to permit remote testimony. Counsel did not confer before filing the motion,

---

[10] *See id.* at ¶ 7–15 *and* testimony of Mr. Downing and Mr. Fuller at November 27 hearing.

[11] *See* Original Petition and First Amended Petition [Doc. 1-1, 1-2].

[12] Order [Doc. 5].

[13] Email Exchange One [Ex. 1-A], p.5.

[14] *Id.* p.4.

[15] *Id.* p.3.

[16] Second Am. Compl. [Doc. 6].

[17] Application for Injunction [Doc. 7].

as required by the rules.[18] (Truist would not have opposed the request—it wrote Valley Chili's counsel that evening to say "no opposition" and to request a return courtesy if needed.[19]) Truist filed its brief on November 22,[20] the day before Thanksgiving, and the Court held an evidentiary hearing on the injunction request on November 27, the following Monday.

After the hearing but before a ruling, Truist's counsel wrote Valley Chili's counsel about the status of service, offering to accept a waiver form on behalf of the bank.[21] Valley Chili's counsel did not respond to the request.

On November 29, the Court dissolved the TRO and denied the injunction request—finding that " (1) [Valley Chili]'s non-UCC claims are preempted by Article 4A, and (2) Article 4A does not allow [Valley Chili] to recover the wired funds directly from [Truist Bank]."[22] The Court based its ruling **on the merits of the claims**, not merely on the absence of irreparable harm.

The next day—after the Court ruled that the UCC barred Valley Chili's claims—Valley Chili issued ten requests for production.[23] Truist's counsel responded to point out that service of process was not complete and the discovery period was not open. Counsel also asked for a response to the "email from Tuesday, when [counsel] said you have not yet served the bank and [counsel] offered to sign a waiver of service form."[24] Valley Chili's counsel again ignored the offer, electing instead to request summons[25] and serve the bank on December 4: exactly 21 days before Christmas Day.

---

18 LOCAL RULE CV-7(G) ("Conference Required").

19 Email Exchange One [Ex. 1-A] p.2.

20 [Doc. 12].

21 Email Exchange One [Ex. 1-A] p.1.

22 Order [Doc. 17] p.7.

23 Email Exchange Two [Ex. 1-B].

24 *Id.*

25 [Doc. 18].

The parties have engaged in other settlement discussions, but they have not yet borne fruit.[26] Valley Chili's refusal to dismiss its claims obliges Truist to spend more time and money on this motion and requiring the Court to re-engage on issues it has already thoroughly examined and conclusively decided.

To date—to Truist's knowledge—Valley Chili has not sued the "John Doe" who hacked the law firm's email account, or any other actor who may be lawfully responsible for Valley Chili's losses.

## ARGUMENTS AND AUTHORITIES

As the Court has ruled, the UCC bars Valley Chili's claims and re-pleading would be futile because "Article 4A does not allow [Valley Chili] to recover the wired funds directly from [Truist]."[27] Truist will (1) present the well-known Rule 12(b)(6) standard, followed by (2) re-briefing of the UCC Article 4A issues. In the final subparts, Truist will (3) provide an independent basis for dismissing the claims, and (4) explain why the declaratory judgment claim cannot survive.

### 1. Rule 12(b)(6) Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure empowers courts to dismiss a complaint because it fails to state a claim upon which relief may be granted.[28] To survive a motion to dismiss, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[29] A complaint must provide enough factual matter to, when taken as true, state a claim that is plausible on its face.[30] A claim has facial plausibility when the plaintiff pleads

---

[26] In the interest of transparency, and to avoid a claim that Truist's recitation of the facts omits relevant information, Truist attaches a complete exchange of emails between counsel as Exhibit 1-C.

[27] [Doc. 17] p.7.

[28] *See CyboEnergy, Inc. v. Altenergy Power Sys.*, No. WA-22-cv-1136, 2023 WL 5968000 (W.D. Tex. Sept. 13, 2023) (Cardone, J.).

[29] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

[30] *Id.* at 556.

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[31]

### 2. The UCC Bars Valley Chili's Claims

Valley Chili cannot state a claim under the UCC for two independent reasons. First, "Article 4A does not allow Plaintiff to recover the wired funds directly from Defendant" because Valley Chili was not in privity with Truist.[32] And second, the Court can (but need not) alternatively rule that the Amended Complaint fails to allege Truist had "actual knowledge" of the alleged mismatch between the account name and number.

#### *a. Valley Chili lacks privity with Truist Bank, which is fatal to its UCC claim.*

Section 25-4A-207(b)(2) states that if the beneficiary bank "knows that the [account] name and number identify different persons" in a payment order, then "acceptance of the [payment] order cannot occur."[33] While this section creates that rule, it does not create a cause of action because it does not specify *who can sue whom*.[34] The official comments to section 25-4A-207, though, contemplate that Section 25-4A-402 supplies a cause of action for payment orders that cannot be accepted under Subsection (b)(2).[35]

The plain text of Section 25-4A-402 supplies the privity rule. Subsection (d) provides that "if the sender of a payment order pays the order and was not obliged to pay all or part of the amount paid"—for example, because the beneficiary bank actually knew of a name-number mismatch—"the

---

[31] *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

[32] Order [Doc. 17] p.7.

[33] N.C. GEN. STAT. § 25-4A-207(b)(2).

[34] *Cf.* N.C. GEN. STAT. § 25-4A-207(c), (d) (specifying who may recover from whom only for orders that are "accepted" under subsection (b)(1) or "governed by subsection (b)(1)").

[35] N.C. GEN. STAT. § 25-4A-207, cmt. 2 (explaining in hypothetical that if "Beneficiary's Bank knew about the conflict between the name and number," "acceptance of the payment order of Originator's Bank did not occur because there is no beneficiary of that order" and citing "Section 4A-402" as supplying the remedial vehicle).

*bank receiving payment* is obliged to refund payment to the extent the *sender* was not obliged to pay."[36] In other words, a party may recover the funds under this section *only* if they were the sender, and only from the "bank receiving payment."[37] As this Court recognized, "Plaintiff did not send the wire transfer to Defendant—Western Heritage Bank did. Therefore, even if Defendant had actual knowledge of the mismatch and could not rightfully accept the wire transfer pursuant to Section 25-4A-207(b)(2), Plaintiff has no right to recover its funds directly from Defendant."[38] In making that ruling, this Court relied on courts that reached the same conclusion on identical facts.[39]

Because Western Heritage Bank, not Valley Chili, was the sender in the payment order that involved Truist, "Plaintiff has no right to recover its funds directly from Defendant."[40]

***b. In the alternative, Valley Chili cannot show that Truist Bank had "actual knowledge" of a discrepancy in the wire order, which is also fatal to its UCC claim.***

The Court need not resolve this issue because the privity bar is fatal to Valley Chili's UCC claim, but alternatively, Valley Chili cannot state a claim because it cannot allege that Truist actually knew of a discrepancy between the account name and number. Beneficiary banks are responsible for accepting and crediting wires, under conditions described by law.[41] Article 4A encourages swift processing of transfers: an economical practice free from human error. The statute addresses misidentification of a wire's beneficiary: if a payment order identifies a name and an account number that do not match, and the bank processed the transaction without knowledge of the discrepancy,

---

[36] N.C. GEN. STAT. § 25-4A-402 (emphasis added).

[37] *Id.*

[38] Order [Doc. 17] p.7.

[39] *Approved Mortgage Corp. v. Truist Bank*, 638 F. Supp 3d 941, 950 (S.D. Ind. 2022); *Scura, Wigfield, Heyer, Stevens & Cammarota, LLP v. Citibank, N.A.,* No. 2:21-cv-12835, 2022 WL 16706948 at *3 (D.N.J. Oct 3, 2022).

[40] Order [Doc. 17] p.7.

[41] N.C. GEN. STAT. § 25-4A-103 defines "beneficiary's bank" as "the bank identified in a payment order in which an account of the beneficiary is to be credited pursuant to the order or which otherwise is to make payment to the beneficiary if the order does not provide for payment to an account."

then the beneficiary bank "**may rely on the number as the proper identification of the beneficiary of the order**."[42] The bank "need not determine whether the name and number refer to the same person."[43]

Section 25-4A-207(b)(2) states that a payment order cannot be accepted if the beneficiary bank "knows that the [account] name and number identify different persons." The official comments to this Section make plain that "'[k]nowledge' and 'knows' are defined in Section 1-202(b) to mean *actual knowledge*, and Section 1-202(f) states rules for determining when an organization has knowledge of information received by the organization."[44] Section 25-1-202(f) makes plain that actual knowledge means a human being at the bank must know about the mismatch at the time of the transaction: "[n]otice, knowledge, or a notice or notification received by an organization is effective for a particular transaction from the time it is brought to the attention *of the individual conducting that transaction*."[45]

The opinion in *Squeeze Me Once, LLC v. SunTrust Bank* is instructive.[46] In that case, involving Truist's predecessor entity, the court recognized plaintiff's burden to show the bank's "actual knowledge" of a discrepancy. Because plaintiff could not show "manual intervention or review prior to the wire transfer order," the court applied Section 4A.207 to bar plaintiff's claims.[47] Likewise, in *Peter E. Shapiro, P.A. v. Wells Fargo Bank, N.A.*,[48] an allegedly defrauded plaintiff argued that Wells Fargo had actual knowledge of a mismatch because the bank used an auditor to review transactions for sanctions compliance. The court disagreed, noting that while "the audit report noted a possible

---

42 N.C. GEN. STAT. § 25-4A-207(b)(1) (emphasis added).

43 *Id.*

44 N.C. GEN. STAT. § 25-4A-207, cmt. 2 (emphasis added).

45 N.C. GEN. STAT. § 25-1-202(f) (emphasis added).

46 630 F. Supp. 3d 763, 768 (M.D. La. 2022), applying Louisiana's parallel Section 4A.207 statute.

47 *Id.* at 775–76.

48 352 F. Supp. 3d 1226 (S.D. Fla. 2018).

mismatch, this digitally stored information did not come to anyone's attention at the time of the transfer."[49] The plaintiff also argued the bank's knowledge because the bank had previously processed a fraudulent wire into the subject account. Again, the court disagreed, writing that "these facts do not create actual knowledge of a mismatch in the wire transfer at issue."[50]

The complaint attempts to avoid this result by writing, only in passing, that Truist knew upon receiving the order that the name and the account did not match.[51] Valley Chili offers no supporting facts beyond this bare conclusion, which requires dismissal.[52] The allegation is also implausible and contradicted by the other alleged facts: the first allegations related to bank personnel occur on November 8—nine days after the order.[53] Mr. Fuller's testimony on November 27 confirmed that no bank personnel was involved sooner than November 8.

### *c. The UCC preempts common law claims.*

Article 4A provides the "**exclusive means** of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article [4A]."[54] Parties

---

[49] *Id.* at 1233.

[50] *Id.*

[51] Second Am. Compl. ¶ 32.

[52] *Serviacero Especiales SA DE CV v. JPMorgan Chase Bank, N.A.*, 2021 WL 4805448, at *2 (C.D. Cal. July 15, 2021) ("Plaintiff's addition of the conclusion that Defendant knew of the discrepancy does not change the fact that Plaintiff has alleged no <u>facts</u> to support that inference, beyond the bald assertion that the name and number on the payment did not match."); *Metro Denver Title, LLC v. JPmorgan Chase Bank, N.A.*, 2022 WL 17547943, at *3-4 (D. Colo. Aug. 16, 2022) (same); *see also Kent Grp. Partners, LLC v. Citizens Bank, Nat'l Ass'n*, 2023 WL 5352051, at *2 (N.D. Ohio Aug. 21, 2023) ("A party claiming that a bank actually knew about a name discrepancy between wire instructions and the transferee account's owner must plead particular facts supporting the claim of actual knowledge. (emphasis added)).

[53] *Compare* Second Am. Compl. ¶ 13 (the wire was dated October 30) *with id.* ¶ 15 (Valley Chili discovered the fraud on November 7) *and id.* ¶ 17 (a bank officer identified the name and number mismatch "on or about November 8").

[54] N.C. GEN. STAT. § 25-4A-102, cmt. ("The rules that emerged represent a careful and delicate balancing of [competing] interests and are intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article. **Consequently, resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article**.") (emphasis added).

cannot seek from common law a remedy that Article 4A provides or prohibits.[55] Courts routinely dismiss common law claims for negligence, negligence per se, and conversion as preempted by the UCC when they are based upon a bank's conduct in processing funds transfers:

> The Court holds that META's claims are preempted by Article 4A to the extent they are based on the Bank's conduct in processing the automated funds transfers. Article 4A.207 plainly covers the scenario alleged here, where the name and account number on META's ACH Transfer Document were different. . . . Common law claims against a beneficiary's bank in this scenario are therefore preempted.[56]

Again, the Court explained and adopted the reasoning from *META Solutions* and other cases,[57] writing that Article 4A preempts Valley Chili's non-UCC claims "because those claims are directed as a scenario 'plainly cover[ed] by Section 25-4A-207.'"[58] Because Valley Chili's non-UCC claims are based upon the same conduct as its UCC claim, those claims are preempted and no repleading could revive them.

#### 3. Each Claim Lacks a Required Element.

Even if Valley Chili could articulate a basis for its claims adequate to escape the gravity of UCC preemption, each claim fails for independent reasons.

The equitable claims fail because the complaint fundamentally misunderstands the nature of a bank deposit. Each of those claims—Money Had and Received, Restitution/Unjust Enrichment, and Constructive Trust—depends on the notion that Truist Bank has been enriched. On the contrary,

---

[55] *Contractors Source, Inc. v. Amegy Bank Nat'l Ass'n*, 462 S.W.3d 128, 137–38 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (Article 4A preempts common law negligence and breach of contract claims); *Moody Nat'l Bank v. Tex. City Dev. Ltd., Co.*, 46 S.W.3d 373, 379 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (same).

[56] *META Sols. v. First State Bank of Brownsboro*, No. 6:19-cv-329, 2020 WL 12991132 at *4 (E.D. Tex. Apr. 16, 2020). *See also Sunset Cmty. Health Ctr. v. Capital One Fin. Corp.*, 652 F. Supp. 3d 1020, 1027–28 (D. Minn. 2023) (dismissing claims for promissory estoppel, breach of contract, conversion, civil theft, and unjust enrichment as preempted).

[57] Including *Hirt v. Wells Fargo Bank, N.A.*, No. 20-cv-1616, 2021 WL 536514 at *3 (S.D. Tex. Jan 5, 2021), *Consorcio Industrial de Construccion Titanes, S.A. de C.V. v. Wells Fargo Bank, N.A.*, No. 10-cv-2111, 2012 WL 13019678 at *2 (N.D. Tex. July 12, 2012), and *Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267, 1274–75 (11th Cir. 2003), quoted in the Court's Order [Doc. 17] at p. 4, 6.

[58] Order [Doc. 17] p.5.

bank deposits become *liabilities*, not assets, on the balance sheet. Contractual, statutory, and regulatory obligations limit the use of deposit funds. Those claims also fail because they depend on unjust acts by the defendant, which do not exist in this case, where the UCC obliged Truist to act as it did.

The negligence claim also fails for lack of a duty. "In general, 'in the absence of a fiduciary or confidential relationship, a bank owes no duty to a person with whom the bank has not dealt and otherwise has no relationship.'"[59] Banks owe duties to their customers, not to third parties.[60]

### 4. The Federal Declaratory Judgment Act Does Not Confer Jurisdiction.

As the Court recognized, the declaratory judgment act is a "theory of recovery," not an independent cause of action.[61] Upon removal, the state declaratory judgment claim converted to a federal claim.[62] And the Fifth Circuit recognizes that "The Declaratory Judgment Act is not an independent ground for jurisdiction; it permits the award of declaratory relief only when other bases for jurisdiction are present."[63] In the absence any other cognizable claim, the Court lacks jurisdiction to issue a declaratory judgment or injunctive relief.

## CONCLUSION & PRAYER

Because Valley Chili fails to state a claim on which this Court may grant relief, Truist Bank asks the Court to dismiss all of Valley Chili's claims against it with prejudice. Truist also asks for any further relief to which it is entitled.

---

[59] *Id.* at *5, quoting *Midwestern Cattle Mktg, L.L.C. v. Legend Bank, N.A.*, 800 Fed. Appx. 239, 248 (5th Cir. 2020).

[60] *Marlin v. Moody Nat'l Bank, N.A.*, 248 F. App'x 534, 540 (5th Cir. 2007).

[61] Order [Doc. 5] p.4, citing *Trien v. Fed. Home Loan Mortg. Corp.*, 400 F. Supp. 3d 596, 602 (W.D. Tex. 2019).

[62] *Piazzo v. Allstate Indem. Co.*, 601 F. Supp. 3d 189, 195 (S.D. Tex. 2022) ("The Texas Declaratory Judgment Act is a procedural mechanism that is inapplicable in federal court. . . . the statute is not substantive law. . . . the action is in effect converted into one brought under the federal Declaratory Judgment Act" (citations omitted).

[63] *Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir. 1980). *See also Enter. Int'l v. Corporación Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 470 (5th Cir. 1985) ("The district court has no power to grant an interlocutory or final injunction against a party over whom it has not acquired valid jurisdiction . . . .").

Respectfully submitted,

By: s/ David M. Clem
**David M. Clem**
Texas Bar No. 24050428
dclem@johnstonclem.com

**Richard Kim**
Texas Bar No. 24127476
rkim@johnstonclem.com

**JOHNSTON CLEM GIFFORD PLLC**
1717 Main Street, Suite 3000
Dallas, Texas 75201
(214) 974-8000 Main
(972) 474-1750 Facsimile
(972) 474-1717 D. Clem Direct

***Attorneys for Truist Bank***

**Certificate of Service**

I certify that my office served a true and correct copy of this document on December 19, 2023, via the Court's CM/ECF system to:

**Robert R. Feuille**
bfeu@scotthulse.com
**Henry J. Becker**
hbec@scotthulse.com
SCOTTHULSE PC
One Jacinto Plaza
201 E. Main Street, Ste. 1100
El Paso, Texas 79901
(915) 546-8333 Facsimile

By: s/ David M. Clem
**David M. Clem**